UNITED STATES DISTRICT COURT

FILED

DISTRICT OF CONNECTICUT

2004 NOV 22 A 10: 48

U.S. DISTRICT COURT

UNITED STATES OF AMERICA          CASE NO. 3 02cr81(JBA)

PLAINTIFF

vs.

PATRICK A. TRIUMPH

DEFENDANT

MOTION FOR DOWNWARD
DEPARTURE BASED
SIGNIFICANTLY REDUCED
MENTAL CAPACITY UNDER
SENTENCING GUIDELINES

The defendant, PATRICK A TRIUMPH, PRO
SE, SEEKS A downward departure based on
A Pathological gambling addiction, which
significantly has reduced the defendant's
mental capacity pursuant to the provisions
under the Sentencing Guidelines U.S.S.G.
Section 5K2.13, PS, 18 U.S.CA.

The defendant contends that the
State of Connecticut encourages people to gamble,
using Promotional events of world class entertainment
at the famous "Foxwoods" and "Mohegan Suns"
Casino to induce people Gamble with very
Little Psychological and Mental Control. The
Question presented is whether, when A
person becomes A pathological gambling
Addict, partly as A Result of this pervasive

-1-

gaming atmosphere, and is driven to crime as a result of his addiction, the court may rely upon this pathology in downwardly departing under the United States Sentencing Guidelines ("U.S.S.G.") The answer is yes.

In part, the defendant relies on the United States v. Liu, 267 F. Supp. 2d 371 (E.D.N.Y. 2003), where defendant was entitled to a four point downward sentencing departure under the Sentencing Guidelines based on significant reduced mental capacity attributed to defendant's pathological gambling addiction; expert testified that defendant suffered from a pathological gambling addiction which constituted an impulse control disorder, the disorder interfered with defendant's ability to control behavior he knew was wrongful, and this disorder led to crime. U.S.S.G. Section 5K2.13 ps, 18 U.S.C.A.

Moreso, the Defendant relies on the usage of the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM IV"). The DSM IV's criteria for pathological gambling are as follows

(1) His preoccupied with gambling. E.g preoccupied with reliving past gambling experiences, handicapping or planning the next venture or thinking of ways to get money to with which to gamble.

-2-

2. Need to gamble with increasing amounts of money in order to achieve the desired excitement

3. has repeated unsuccessful efforts to control cut back, or stop gambling.

4. Is restless or irritable when attempting to cut down or stop gambling

5. gambles as a way of escaping from problems or of relieving a dysphoric mood (E.g., feelings of helplessness, guilt, anxiety, depression)

6. After losing money gambling, often returns another day to get even ("chasing" one's losses).

7. Lies to family members, therapist or others to conceal the extent of involvement with gambling

8. has committed illegal acts such as forgery, fraud, theft, or embezzlement to finance gambling

9. has jeopardized or lost a significant relationship, job, or educational or career opportunity because of gambling.

10. Relies on others to provide money to relieve a desperate financial situation caused by gambling.

A score of five or more indicates a

-3 -

diagnosis of Pathological Gambling. The Defendant contends that he has a Perfect Score — ten out of ten.

In the case of United States v. Liu, the Psychiatrist, Stephen Black, explained that pathological gamblers have a "persistent and progressive need to gamble and are unable to stop or control once they begin to gamble. Pathological gambling as an impulse control disorder has been recognized by the American Psychiatric Association since 1980. The expert noted that Liu's illegal activities started after he exhausted his personal funds and savings, he found a "direct connection between [Liu's] illegal activities and his gambling." Approximately 30-40% of pathological gamblers are involved in illegal activity to support their gambling addiction, according to the witness.

Moreso, Liu's wife testified that her husband had been a habitual gambler since 1980's and that he tried to hide his gambling addiction from her. She detailed the ways in which Liu's gambling activities had had a deleterious effect on her and their children. Mr. Liu's acknowledge that gambling had become a "very serious disease for me".

An assessment and evaluation of Liu concludes that Liu's "preoccupation with

-4-

gambling led him to ignore family responsibility and ultimately to commit illegal acts to finance his continued gambling." The expert concluded that the fact that Liu was unable to stop gambling even when he was caught in illegal activity is "typical of the pathological gambler." Noted was the fact that Liu exhausted his savings and made legitimate loans to finance his gambling before resorting to illegal activities. Mr Block concluded that the charged "illegal activity was tied into obtaining funds with which to gamble." None of defendant's crimes were violent.

Accordingly, a four-point downward departure was granted. The minimum term of incarceration was chosen because defendant has otherwise been a good husband, father, and hard worker who will benefit from the treatment for this addiction ordered by the court.

## Legal Analysis

A sentencing court may downwardly depart if the defendant suffers from diminished capacity. U.S.S.G. Section 5K2.13. The provision reads:

A sentence below the applicable guide range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not

-5-

depart below the applicable guideline range if
(1) The significantly reduced mental capacity
was caused by the voluntary use of drugs or
other intoxicants; (2) The facts and circum-
stances of the defendant's offense indicate
a need to protect the public because the
offense involved actual violence or serious
threat of violence; (3) The defendant's
criminal history indicates a need to
incarcerate the defendant to protect the
public; or (4) the defendant has been
convicted of an offense [involving obscenity,
sex abuse, sexual exploitation of
children, or trafficking in children]
if a departure is warranted, the
extent to the departure should reflect
the extend to which the reduced mental
capacity contributed to the commission
of the crime.

Accordingly, Mr. Triumph asserts that the
exceptions (1) - (4) above are inapplicable, thus
making him potentially eligible for a
downward departure under this provisions
if he committed the offense while suffering
from a significantly reduced mental
capacity.

Curiously, the term "significantly reduced
mental capacity" was not originally defined.

-6-

In 1998 the Sentencing Commission remedied this oversight and added Application Note 1, which defines this term.

"Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

There is a dearth of cases addressing the question of whether a pathological gambling addiction can constitute a significant reduced mental capacity under Section 5K2.13 of the United States Sentencing Guidelines. One of the few decisions to squarely address the question is United States v. Harris, No S1 92 CR. 455 (CSH), 1994 WL 683429 (S.D.N.Y. Dec 6, 1994). In that case, the defendant sought a downward departure for an alleged pathological gambling addiction. In considering whether such an addiction might constitute a basis for a downward departure, the Court noted the discussion of pathological gambling in the DSM IV, "the psychiatric profession's ~~Bible~~ diagnostic Bible." Harris, 1994 WL 683429, at *4 (quoting the New

-7-

York Times, April 19, 1994). In light of the fact that the DSM IV characterizes pathological gambling as an impulse control disorder, the _Harris_ court was not prepared to exclude that disorder, as a matter of law, from consideration under the diminished capacity provisions of section 5K2.13. Absent a contrary holding by the Court of Appeals for the Second Circuit, the _Harris_ court held that a pathological gambling disorder, if proven by a defendant to exist and to have resulted in a significantly reduced mental capacity contributing to the commission of the offenses of conviction, may qualify in law as a form of diminished capacity under section 5K2.13.

Significantly, _Harris_ was decided before the 1998 amendment defining "diminished mental capacity." The Court of Appeals for the Second Circuit has not determined whether a pathological gambling addiction can constitute diminished mental capacity under the 1998 definition of that term. Such a determination has, however, been made in the Sixth Circuit. See _United States v. Sadolsky_ 234 F. 3d 938 (6th Cir. 2000). The _Sadolsky_ court considered whether a pathological gambling addiction could

-8-

constitute a basis for "Significantly Reduced Mental Capacity" as that term is used in post-1998 Section 5K2.13. It noted that in a prior 1991 decision, United States v. Hamilton 949 F 2d 190 (6th Cir. 1991), it had held that a pathological gambling addiction did not form a basis for "Significantly reduced mental capacity" because the defendant in that case "was able to absorb information in the usual way and to exercise the power of reason. He took to selling drugs illegally not because of any inability to understand his situation, but because he needed money." Hamilton, 949 F 2d at 193.

The Sadolsky court held that Hamilton no longer rules. See Sadolsky, 234 F 3d at 948. Its decision was based on the fact that Hamilton turned on whether or not a pathological gambling addiction presented a cognitive impairment. The 1998 amendment defining "Significantly reduced mental capacity" clarifies the law: now either a cognitive or volitional impairment will suffer. See Sadolsky, 234 F 3d at 942. The Sadolsky court also noted that section 5K2.13 does not differentiate between instances in which the reduced mental capacity explained the behavior that constituted the crime or motivated the crime. A "significantly reduced mental capacity must be a contributing

-9-

cause of the offense, but need not be the sole cause. United States v. Sadolsky, 234 F.3d 943 (quoting United States v. McBroom, 124 F.3d 533, 548 n.14 (3d Cir. 1997)

The defendant contends that the language of the provision as well as precedent support the view that a pathological gambling addiction may constitute "significantly reduced mental capacity" under section 5K2.13; the ruling that a pathological gambling addiction may constitute such a reduced mental capacity, left undisturbed in HARRIS, is bolstered by the 1998 Amendment.

Additionally, the defendant points out that the Guidelines allows a judge to depart downward for diminished capacity when the defendant committed a nonviolent offense. See e.g. United States v. Bryson, 163 F.3d 742, 747 (2d Cir 1998) (downward departure may be warranted for extraordinary rehabilitation efforts by impaired defendant); United States v. Apple, 915 F.2d 899, 903 n.12 (4th Cir. 1990) (downward departure warranted because defendant, a battered wife, committed nonviolent offense while suffering from ~~post traumatic~~ chronic depression; United States v. Davis, 919 F.2d 1181, 1187 (6th Cir. 1990) (downward departure warranted because defendant committed

- 10 -

Non violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of intoxicants). United States v. Risse, 83 F.3d 212, 217 (8th Cir. 1996) (downward departure warranted because defendant committed non violent offense while suffering from post-traumatic stress disorder resulting from service in Viet Nam War);

Accordingly, the defendant contends that based on the reliance of the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM IV"), there is no doubt that he fits into the criteria for a Pathological Gambler. The manifestations of his preoccupation with gambling, characterised by the persistent and progressive need to gamble and is unable to stop or control once he begins to gamble is testimony to the fact that the defendant significantly suffered from a reduced mental capacity pursuant to the Sentencing Guideline 18 U.S.C. Section 5K2.13.

Specifically the defendant gambling addiction included.

I. Daily visits to the casino in avoiding the stress of the criminal investigation during the period of 1996 - 2002.

-11-

2. Loss of Large Sums of Money.

3. Very Little Rest and Sleep between work and Gambling Activities

4. Sloppiness of Tax Preparation, in many Instances of over-scheduling for work activities as a Result of Gambling.

5. Very depressed and Stressed if unable to visit the Casino within days.

Further, the Defendant States that the District Court has authorize funds for a proper psychiatric evaluation of the defendant, under the Authority of 18 U.S.C. Section 3006 A(e) -- evaluation by an expert psychiatrist chosen by the defendant for the purpose of evaluating whether or not the defendant suffered from a diminished mental capacity at the Time the defendant committed the offense; and to determine whether any other psychological Reason for Leniency exists.

Accordingly, the Defendant hereby moves this Honorable Court to permit the Defendant to be evaluated by his psychiatrist, in order to determine if a Request for a downward departure due to the defendant's diminished mental capacity is appropriate, and Respectfully

-12-

Respectfully ask the court to defer sentencing in the provision of the Fair Sentencing Act guaranteed by the Sixth Amendment, and for any other relief that may be just and proper in this cause.

Respectfully Submitted

DATED. Nov. 15. 2004

PATRICK A. TRIUMPH

-13-

## CERTIFICATION OF SERVICE

This is to certify that a memorandum in support of motion for downward departure pursuant to U.SSG. Section 4A1.3 (Adequacy of Criminal History), was served upon the following:

David A. Ring
Assistant U.S. Attorney
157 Church St. 23rd Floor.
New Haven, CT 06510.

by placing a copy of same in the United States mail with proper postage affixed to ensure delivery.

Dated this 16th November, 2004.

Respectfully Submitted.

Patrick A. Triumph