# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA
PLAINTIFF

vs

PATRICK A. TRIUMPH
DEFENDANT

CASE NO. 3:02CR81(JBA)

DATE: NOVEMBER 30, 2004

## MOTION FOR DOWNWARD DEPARTURE BASED ON COMBINATION OF EXTRAORDINARY FAMILY CIRCUMSTANCES, COMMUNITY SERVICE AND CHARITABLE WORK.

COMES NOW THE DEFENDANT, PATRICK A. TRIUMPH, PRO SE, MOVES THIS HONORABLE COURT TO ISSUE AN ORDER FOR A DOWNWARD DEPARTURE FROM THE SENTENCING GUIDELINE RANGE BASED ON COMBINATION OF EXTRAORDINARY FAMILY CIRCUMSTANCES, COMMUNITY SERVICE AND CHARITABLE WORK, PURSUANT TO THE PROVISIONS UNDER THE UNITED STATES SENTENCING

Guidelines. U.S.S.G. Sections 5H1.6 and 5H1.11
13 U.S.C.A., warrant a significant downward
departure from the applicable guidelines.

## EXTRAORDINARY FAMILY CIRCUMSTANCES

The goal of the sentencing Guidelines is to ensure
greater evenhandedness and unanimity in sentencing.
While the Guidelines do not eliminate all off a
district court's discretion to depart, based on the
individual circumstances of a given case, they do
provide several express restrictions. For instance, they
provide that certain factors, such as race, sex, national
origin, religion, creed, and socio-economic status,
may never be used as a basis for departure. U.S.
Sentencing Guidelines Manual Section 5H1.10 policy
statement (1997). Other factors are discouraged
bases for departure because they "are not ordinarily
relevant to the determination of whether a sentence
should be outside the applicable guideline range."
U.S. Sentencing Guidelines Manual Ch. 5, pt. H, intro,
commentary; KOON V. UNITED STATES, 518 U.S 81, 96, 116 SCT.
2035, 135 L.Ed 2d 392 (1996). Discouraged factors
may only be relied upon where "the factor is
present to an exceptional degree or in some other
way makes the case different from the ordinary
case different from the ordinary case where the
factor is present." KOON, 518 U.S AT 96, 116 S.CT

-2-

AT 2045.

FAMILY TIES AND RESPONSIBILITIES ARE A discouraged basis for departure. SEE U.S. SENTENCING Guidelines MANUAL SECTION 5H1.6 Policy STATEMENT. This is because "MANY defendants shoulder RESPONSIBILITIES TO THEIR FAMILIES ... DISRUPTION of The defendant's LIFE, AND The CONCOMITANT difficulties For those who depend on the defendant, ARE INHERENT IN THE punishment of INCARCERATION." UNITED STATES V. JOHNSON, 964 F 2d 124, 128 (2d Cir. 1992). THE PRESENCE of A hardship RESULTING FROM IMPRISONMENT is THEREFORE ORDINARILY NOT ENOUGH TO WARRANT A departure. IT is NOT EXTRAORDINARY circumstances ... NOT CAPABLE of ADEQUATE CONSIDERATION ... THAT MAY CONSTITUTE proper grounds For departure" Id. IN OTHER words, only if A district Court finds THE hardship To BE EXCEPTIONAL may it downwardly depart on That basis. SEE UNITED STATES V. GALANTE, 111 F.3d 1029, 1034 (2d Cir. 1997).

IN UNITED STATES V. JOHNSON, 964 F.2d AT 129, THE COURT held That "THE RATIONALE FOR A downward departure here is NOT THAT [defendant's] FAMILY CIRCUMSTANCES decrease [his] CULPABILITY, but THAT WE ARE RELUCTANT TO WREAK EXTRAORDINARY destruction on dependents who RELY solely on THE defendant FOR THEIR upbringing." SENTENCING COURTS MUST THEREFORE FOCUS on THE VULNERABILITY OF THESE

-3-

dependents, assessing the hardships that a sentence of incarceration would impose on them. Accordingly, courts have granted departures on this ground where it is clearly established that the defendant is a unique source of a financial and/or emotional support for a significant number of dependents. See e.g. United States v. Faria, 161 F.3d 761, 762 ('2d Cir 1998) ("we have upheld downward departures based on family circumstances where the family was uniquely dependent on the defendant's ability to maintain existing financial and emotional commitments.") (quoting United States v. Sprei, 145 F.3d 528, 535 (2d Cir 1998)); United States v. Galante, 111 F.3d 1029, 1037 (2d Cir 1997)

In the Second Circuit, a district court has the authority to depart downward for extraordinary family circumstances, including parent responsibilities to maintain existing financial and emotional commitments. In Johnson, the circuit upheld a departure for a single parent who faced "extraordinary" parental responsibilities, "more than the responsibilities of an ordinary parent, more even than those of an ordinary single parent" for she was "solely responsible for the upbringing of her three young children of her institutionalized daughter." Johnson 964 F.2d at 129. In United States v. Alba, 933 F.2d 1117 (2d Cir 1991), the defendant worked two

-4-

Jobs to support his wife, two children, his grandmother, and his disabled father who depended on the defendant's physical strength "to help him get in and out of his wheel chair." Id at 1122. In Galante, a divided panel upheld a departure under circumstances similar to those in Johnson and Alba, the defendant played a primary role in the education, upbringing and support of two young children, since his wife spoke very little English and had a limited earning capacity. In addition, his father was critically ill in a chronic care facility and might require future physical and financial assistant. Galante, 111 F.3d at 1035. See also, United States v. Califano, 978 F.2d 65, 65 (2d Cir. 1992) (per curiam); United States v Sharpsteen, 913 F.2d 59, 63 (2d Cir. 1990).

If the district court has declined to depart relying on the mistaken belief that it lacked authority to depart, its decision is appelable, see e.g United States v Speenburgh, 990 F.2d 72, 75 (2d Cir 1993); United States v. Califano, 978 F.2d at 65, United States v. Richardson, 923 F.2d 13, 15 (2d Cir 1991) United States v. Sharpsteen, 913 F.2d at 63. We will not normally infer that the sentencing court believed that it had no authority to depart where it gave no indication that it had such a belief or where it simply expressed sympathy for the defendant but found

- 5 -

The circumstances not to warrant departure. See, e.g. United States v. Caming, 968 F 2d 232, 241-42 (2d Cir), cert denied — US —, 113 S. CT 416, 121 L. Ed. 2d 339 (1992).

If in declining to depart the district court stated a belief that it had no power to depart, and if that belief was erroneous, we vacate the sentence and remand for further proceedings within the proper legal framework. See e.g. United States v. Monk, 15 F 3d 25, 28-29 (2d Cir 1994); United States v. Cheng Ah-Kai, 951 F 2d 490, 494 (2d Cir 1991). Further, if we are unable to discern whether the district court's refusal to depart resulted from the exercised of its discretion or instead resulted from a perceived, but mistaken, lack of authority, we remand to the district court for resentencing. See e.g United States v. Speenburgh, 990 F 2d at 75-76, United States v. Califano, 978 F 2d at 66; United States v. Rogers, 972 F 2d 489, 495 2d Cir 1992); United States v. Ritchey, 949 F 2d at 63. In United States v. Califano, for example the defendant was sentence to a prison term of 235 months, following a hearing in which the court stated, "If I were free to do it, I wouldn't be sentencing anywhere near twenty years, but that's beside the point" 978 F 2d at 66. We noted that the district judge had the power to

-6-

power to depart, and we found his statement at best ambiguous as to whether or not he recognized that power. Accordingly, we vacated the sentence and remanded for resentencing.

Further, in the recent case of United States vs. Henry A. Greene, 249 F. Supp. 2d 262 (S.D.N.Y. 2003), defendant was entitled to seven-level downward departure in sentencing for aiding and assisting in preparation of false income tax returns, based on combination of his charitable work/community service and extraordinary family circumstances. Sentence of probation rather than incarceration or home detention was appropriate for defendant convicted of aiding and assisting in preparation of false income tax returns, as to whom downward departure of seven levels had been applied based on combination of charitable work and community service and extraordinary family circumstances, since defendant was sole provider of financial and emotional support for three exceptionally emotionally vulnerable adopted children, any period of incarceration would risk causing grievous harm to them, sentence to probation when coupled with restitution was sufficient to serve aims of deterrence and retribution.

### IMPACT OF INCARCERATION

-7-

While sentencing guidelines were intended to ensure a more honest, uniform, equitable, proportional and therefore effective sentencing system, they must not be interpreted as eliminating judicial sentencing discretion, and traditional task of imposing a just and fair sentence, based upon an independent view integrating all philosophical, statutory, guidelines and individual particulars of case at hand remains job of nisi *prius* judge.

A court confronted with a motion for a downward departure should first determine what factors make the case unusual, taking it out of the "heartland" of typical cases, and then whether the sentencing commission has forbidden, encouraged, or discouraged departures based on those factors.

The determination to depart downward from sentencing guidelines, based upon extraordinary family circumstances is fact-intensive and thus commended to the district court's discretion. The court should not depart based on generic concerns about breaking up a family.

When departing from sentencing guidelines, based on family circumstances, there is no requirement that the circumstances be extraordinary by any particular degree or magnitude, niether must they be extra-extraordinary or truly extraordinary. Rather, it must be shown that the period of

-8-

Incarceration set by the guidelines would have an effect on family members beyond the disruption to family and parental relationships that would be present in the usual case.

In determining whether to depart downward from sentencing guidelines, based upon extraordinary family circumstances, the court should consider the specifics of the family situation: (1) the number of dependents the defendant has, the responsibility the defendant has for them, and the role he or she plays in their lives. (2) whether the dependents have any special needs and the defendant's role in meeting them, (3) whether there are others who could replace the defendant in the dependents' lives, and (4) whether the defendant's absence would force the family onto public assistance or the children into state custody. U.S.S.G. Section 5H1.6. 18 U.S.C.A.

Moreover, departure from sentencing guidelines, based on family circumstances, is warranted if the nature of the offense and the character of the defendant tend to show that no end other than punishment will be served by imprisonment, if there is no threat to the community and if society will ultimately benefit by allowing the defendant to care for his or her family. U.S.S.G. Section 5H1.6, 18 U.S.C.A.

-9-

The DEFENDANT makes REFERENCE TO his daughter's LETTER TO "Honorable JANET Bond-ARTERTON" dated November 01, 2004, which Reads in Part:

"NO MATTER what SETTING my Father is SEEN his disposition STAY THE SAME, which is ONE OF pleasure And POISE, I have FULL CONFIDENCE in my FATHER THAT whatever is Thrown his way will be handled, but I do not KNOW if THE SAME CAN be said for my siblings And myself. I KNOW most OF THE TIME you have SEEN my FATHER you do not SEE what TRULY MAKES up the man but this letter is a little insight to what does. This LETTER is coming From THE Oldest daughter of Patrick Triumph." [Remila Triumph)

My wife CHRISTINE Triumph letter to Honorable JANET Bond-ARTERTON, dated OCT 15, 2004 EXPRESS in Part.

"I cannot begin to express the grieve And Sorrow that we have been enduring AS A FAMILY OVER THE LAST FEW YEAR. --- PATRICK has never been Away From his Family FOR TWO WEEKS, much less Two years And Counting. HE has Always been There with us Through Thick And Thin, To be A Loving FATHER, Provider, SPIRITUAL LEADER, MOTIVATOR, And husband.

-10-

For our family not to be able to be together
for the final days hours and minutes of
our son's life is still an open wound. For
a loving father not to be able to say Goodbye
to his son, not to pray with him not to hold
and touch him, for my children not to have
the comforting arms of their dad when
most needed still lives with us. Judge
Arterton, I cannot begin to express the pain
that lives with us and the fear for more
destruction of human lives with the repercussions
of incarceration or the deliberate attempt
to tear a family physically apart.

Patrick Triumph is fighting for his family.
The impact of this case can tear and destroy
his family for generation to come, I ask
for you to consider the social, moral, psychological,
and economical effects of tear this
family apart. My husband Patrick is needed as
a husband, father, son, brother, friend, associate,
peer, and simply a free person. This is a good
man none of us are perfect. This man
Patrick Triumph would better serve his community
and family as a free individual where his
helping nature, pursuit of excellence, love,
happiness, and goodness can better serve
society." [ Christine Triumph Letter dated 10/15/04]

-11-

Further, the Defendant's brother Clyde V. Triumph states "Had you the joy of meeting Pat under usual circumstances, you would have met a, wonderful son who adores his mother, a devoted husband who loves his wife, a loving attentive father who attends to every need of his children." "I pray your mercy, not solely because of Patrick's qualities or his current hardship but mainly because of Patrick's family. I've never seen or heard my brother cry until the untimely passing of Patrick Anthony Triumph, Jr. Patrick a man with all the hope and love for the world now needs the world's hope and love. So I pray your mercy! [ Clyde Triumph letter dated 11/8/04).

The Defendant's niece, Sherrilyn McPherson-Johnson writes, in part

"He is my hero because he is my success story and my mentor. My uncle did not have to take care of me the way he did. He was not obligated to but he did because of the type of person he is. He is so wonderful and it hurt me so much that he is unable to be with my aunt and cousins.

Your honor, I am asking you for clemency and allow my uncle Pat to come home to his family. He has missed so much already and I

-12-

CANNOT IMAGINE his pain as he mourns the Loss of my cousin Alone. Please Allow him the opportunity to heal with his Family". (Sherailyn V. McPherson Letter to Honorable Janet Bond-Arterton dated Nov 8/2004).

The Defendant nephew Clewin McPherson writes in part

"While All the other students went home for vacations, my uncle's home was home to me. It provided rest and revival from the difficult semesters. He loved me like a son And Taught me to love like that, as his children are like my siblings.

This summer was a time of for for me [Graduation], but also a time of great Loss as my cousin, Patrick Junior passed away. My uncle was not able to be around and his absence was difficult to deal with, especially for his wife And his daughters and son" (Clewin McPherson Letter dated 11/23/04).

The Defendant's Twin Sister Patricia-Ann Triumph-McPherson, writing from Botswana, Africa states

"Patrick Anthony, is my twin And has always been a integral part of my life. We grew as a closely knit Family and have always

-13-

MAINTAINED that bond. ...

I REMEMBER, YOUR HONOR, IN APRIL THIS year when I visited my brother in the North Carolina Federal Institution Patrick was full of his usual wit and sweet nature. Never, one moment did he talk bitterly about his situation. His only concern was for our mother. He said that he prays that God will continue to strengthen her as she endures the pain, which it must be costing her. He was also much concerned about my life, my plans and my children.

Madam Judge Arterton all that I can do is to appeal to you for mercy. We all make mistakes. And I think that my brother deserves to be with his family. As you know he has two beautiful daughters and a bright young lad. He has lost his first-born son. My brother's family has suffered and endured much. Sometimes too much, I believe. Please I appeal to you, allow him to be reunited with his family. He has missed much of their growing up already. His wife Christine, she too has gone through a lot as well. There have been lessons to learn and, we have all learnt it well. I know that the mistakes of the past will not be repeated. Please, he deserves

- 14 -

A Second chance?

The Defendant's Cousin-in-law in her letter to Honorable Janet Bond-Arterton reveals "This is the caring and devoted Patrick that I know — a people's person. Since his demise, his family has been stripped of life as they knew it. They endured tremendous loss. Patrick's thirteen year old son who bore his name died and dad was not at his son's bedside. His daughter Rimila, now a sixteen year old junior at Hall High school says nothing but buries himself in studies. She does AP biology and hopes to do AP Chemistry next year. His remaining son Clinton, age Twelve, assumes the role as the man of the house. His last child, eight year old Handiya, seems not to comprehend what is happening. The Children need their Dad. Patrick needs to be home to guide his young family. I therefore plead for leniency so that this fragile family can grow up to fulfill their role in society. The mother Christine has been strong in free of all that has happened. She does need the support and care of her husband in raising her young family.

I will continue to hold up the family in prayer and I will also pray for you as you

-15-

Consider this case [ Letter from John L. John, Mother who cares dated Oct 15, 2004). The Defendant's cousin and friend Petal Perriera, writes

"I have known Patrick for over thirty years. He is not only by cousin-in-law, but also one of my best friends"

Patrick is a people's person. He is a devoted son to his mother, a loving husband to his wife, an adoring father to his children and a loyal man to his friends.

The Patrick I know is an outstanding citizen in his community. He was in various charitable organisation and has contributed generously so that those who are less fortunate could have benefited from his contribution. He has always encouraged young people to do their personal best."

The Defendant's Spiritual Father, the Right Reverend Canon Wilborne A. Austin, Vicar of St. Stephen's Episcopal Church writes

"Prior to Mr Triumph's confinement he was an active, positive, caring and generous member of our community. He gave of this time and talents to help and serve people.

— 16 —

In the church he was an active member. He attended church services with his family regularly. He gave of his time and finances to the church generously.

He used his talents by enhancing the life of the vestry. In that capacity he contributed to the smooth running of the church. He helped lend our church financially, spiritually and morally.

He taught church school with a commitment and love of children. The children and parents loved and respected him. I would say that he was instrumental in helping keep the life of the church school vibrant.

For many years Mr. Triumph was involved in outreach ministry and he did so with unselfish dedication. He devoted his time in helping the less fortunate in the cause of education, Christian fellowship and health care.

I feel passionate about the things I have said about Mr. Triumph. He is a man who is dedicated to his wife and children. He is a man of deep spirituality. He gives unselfishly of his time and skills. He cares not only of himself but of his fellowman. He is dearly loved in return by his wife and

-17-

family who ARE EXISTING Now without him physically in their life." [the excerpt from the letter of cannon Wilborne A. Austin]

The Defendant friend Wanda Belgrave in a letter dated October 14, 2004, write to Honorable Judge Janet Bond-Arterton, in part

"He is adored by his children and is a strong father figure. His teen-age daughter, Remila, adores him. Unfortunately, Remila have missed some pertinent years of understanding herself through her father's eyes and thoughts. It is unfortunate because those years have passed and neither she nor Patrick will ever get them back. She is a beautiful young lady who desperately needs her father's touch and guidance.

Clinton, Patrick's youngest son, is the man of the house in dad's absence. He could use his father's consult, warmth, love, discipline and encouragement. His youngest daughter, Hadija is a bold, bright and beautiful child who needs daddy to tuck her in at night, sing a song or pray with her. His presence is greatly missed at school events and PTO's.

And of course, Patrick recently

—18—

SUFFERED ONE OF THE MOST DEVASTING LOSSES A PARENT CAN ENDURE, THE LOSS of his OLDEST SON PATRICK JR. MANY PEOPLE HAVE A SMILE, but LITTLE WORE A SMILE. HE WAS PRECIOUS beyond COMPARE. Through his disability his FATHER LOVED, NUTURED AND PROTECTED him with A GENUINE UNQUESTIONABLE dedication.

As A husband, TIS obvious THAT HE is ATTENTIVE, WARM AND supportive AND provides significant kind of household Leadership.

Finally, Judge ARTERTON, PATRICK TRIUMPH SERVED his community Through dedication TO CAUSE of EDUCATION, TUTORING AND human Rights Through which THE community has SEEN IMPROVEMENT. This is THE power of ONE MAN'S dedication AND ASSISTANCE. THE great POTENTIAL of THE AWE-inspiring MAN should BE RELEASED FOR THE IMMEDIATE BENEFIT of himself, his Family, AND his Community.

THE DEFENDANT NIECE Alish TRIUMPH IN your LETTER TO HONORABLE Judge JANET Bond ARTERTON dated November 3, 2004, WRITES

"MY UNCLE whom I HAVE KNOWN IN ALL MY LIFE is A giving MAN who ALWAYS PUT FAMILY AND OTHER person's NEED before his own."

PERNICIOUSLY, THE EXTENDED INCARCERAT-

- 19 -

ion, coupled with the untimely death of the Firstborn Son Patrick Anthony Triumph Jr. have created a substantial impairment of the intellectual, psychological, emotional and behavioral function of his children warranting a significantly justifiable downward departure.

These family circumstances where the defendant is the sole financial and emotional support for children in such need of some stability warrant a downward departure when viewed in isolation. Because defendant's charitable works and extraordinary family circumstances warrants a departure standing alone, there is no question that the combination of these two factors also warrants a departure. See United States v. Borderson, 67 F.3d 452, 459 n.1 (2d Cir. 1995).

## Extraordinary Charitable Works and Community Service.

The letter of Councilwoman Veronica Airey-Wilson to the Honorable Janet Bond-Arterton attests to the committed and continuous involve in charitable works and community service for over ten years. The letter states "I have know Patrick Triumph for over ten years. I have always know him to be a very hard-working individual who is genuinely interested in serving his

20

COMMUNITY in numerous ways.

MR Triumph has been a consistent force in the greater Hartford community as a volunteer. He has regularly volunteered by tutoring high school students and by providing financial sponsorship to the Rovers Soccer league of Windsor. As a businessman, he has sponsored student interns to learn about finance by assisting in his firm. He served as director of a Caribbean network of social and cultural organisations.

I believe that Patrick Triumph has shown the genuine commitment to his fellow citizens through his community activities and hope that this letter will assist you in coming to a determination in this case." (Councilwoman and Deputy Major of Hartford Honorable Veronin Airey-wilson letter dated Oct 27, 2004).

"His belief in community building is strong. This is witnessed by the continual courtesies to other in times of need" — Wanda Belgrave (Friend of Dundant)

"The Triumphs were the leading family of the faltering St. Stephens's Church in Bloomfield. Through their hard work and perserverance the church today is steadily growing. They could have worshipped at any other church more suited to their children's needs but help was needed at St. Stephen's and

-21-

They Rolled up their sleeves and dug in."
JOAN L. JOHN (A mother who cares).

"When I met Patrick over five years ago,
I saw a dynamic and hardworking Individual,
who was very involved and connected to
the community. He was that person whom most
people seemed to endow, and consult for just
about anything, from what schools to send
their kids, to what attorney or what dentist
to go to. With good Reason, for he
interacted with them at personal levels
such as sponsoring a local soccer league,
and funding other Civic Activities" VIRYANE
M. KIMA, KIMA & Associates, LLC, Attorneys
at Law. (See Latter to Honorable
Judge Bond-Arterton dated November
4, 2004).

"We write on behalf of Mr. Triumph who is
currently being held pending Trial for certain
allegations. this kind and professional
gentleman has been doing business in the
Greater Hartford Area for many years and
since 1995 in the Town of Bloomfield where he
also resided. Through my personal association
with him as a friend, colleague and associate
I have come to know him as a very sincere,
helpful and highly professional Individual.
He is a good Listener and often went

-22-

out of his way to assist people in general who seeks his help in whatever form on a daily basis. He has a very outgoing personality and always welcomed everyone with open arms at his place of business, thus performing a basic community service.

MR. Triumph's community involvement was not confined to the personal level but extended far beyond his place of business. He was actively involved in and lent his support to various charitable causes, sponsorship programs (ex. Windsor Youth Football Team) by way of personal involvement and/or monetary contributions, as well as support for minority organizations.

In addition, his business activities contributed to the economic welfare of the Town of Bloomfield, as he was a highly civic minded businessman. This is born out of for example by his membership in the Bloomfield Chapter Chamber of Commerce. He was ~~always~~ always seeking ways and opportunities for as much individuals as possible. Throughout all my years of association with him I have know Mr. Triumph to be sincere and unselfish in his undertakings. He was more of a humanitarian in his approach to business and was concerned about having

-23-

A positive impact in the Town of Bloomfield as well as the Greater Hartford Area.

Finally, Mr. Triumph's departure would be a great loss to the social and economic life of the community. We therefore respectfully ask for a timely resolution of the legal matters pending and that he be allowed to return to society to do what he knows best and enjoys — doing business and helping people" (Herbert Wilson, Client and Community Activits.)

"Another example of his generosity are his charitable contributions, he has given thousands of dollars to scholarship funds, sponsored atheltic teams and has over 100 God children.

Patrick is a pillar in the Bloomfield community. He was a member of ~~Caribent~~ Caribnet, a Caribbean network that lobbies for immigration rights of the West Indian population, founded by a fellow Bloomfield resident. He volunteered as a tutor for the Homework Club and tutored students from the Bloomfield school system, which I also had the pleasure of being a part of due to his introduction. He was very instrumental in the Town Council campaign of Alred Dyce, where he served as treasurer. A devout Christian

-24-

he worshiped in Bloomfield, and a large amount of the congregation where he worshiped including the Reverend was is clients.

Professionally Patrick is conscientious, and personally he is compassionate. A dedicated father, who loved to have his children with him in the office, a man who allowed a convicted felon to work with him in the office because the young man could not gain employment due to his criminal record.

Overall Patrick is a non violent, upstanding citizen, and is a great asset to have in any community. Please take this into consideration when reviewing his case" ( Angella Thompson, Accountant and Grand jury witness). (See letter dated Oct 15, 2004 to Charmaine Hawkins, United States Probation office).

"Patrick Triumph is a very well known man in the town of Bloomfield, if truth were told he is very well know man in the state of Connecticut. Whether it is form church, the school of me and my siblings, fundraisers, social events, coaching/sponsoring, sports teams, or the infamous office" (Defendant's eldest child Rimila Triumph letter dated November 1, 2004. To Honorable Janet Bond-Arterton.)

"As a young adult my dear uncle

25-

INVESTED IN MY EDUCATION AND ENCOURAGED EXCELLENCE. WHEN I WAS AWAY AT COLLEGE I WAS SO HOMESICK AND IT WAS MY UNCLE PATRICK WHO CALLED EVERY WEEK TO ENCOURAGE AND CHECK IN ON ME. HE WAS THERE TO ENCOURAGE ME THROUGHOUT MY COLLEGE CAREER AND I WAS SO BLESSED TO HAVE HIM SEE ME GRADUATE." (SHERRILYN McPHERSON GRADUATE IN CHEMISTRY AND AQUATIC SCIENCE, UNIVERSITY OF MIAMI).

"AN INDELIBLE IMPACT THIS ACT CREATED IN ME. NEVER DID HE TALK ABOUT IT. NEVER DID HE TALK ABOUT ANY OF THE WONDERFUL THINGS HE DID. PATRICK IS A SON, HUSBAND, FATHER, BROTHER, COUSIN, UNCLE, TWIN, FRIEND, NEPHEW, ADVISOR, MOTIVATOR, SPORTSPERSON, COMMUNITY LEADER, BUSINESS PERSON, THAT JUST KEEPS ON KEEPING ON." (CLYDE V. TRIUMPH, C.P.A, M.B.A, M.SC TAX, EXPERT WITNESS AND BROTHER) (SEE LETTER TO HONORABLE JANET BOND-ARTERTON. DATED NOVEMBER 8, 2004).

LETTER FROM A TAX CLIENT ON THE SERVICE OF MR TRIUMPH, DATED NOVEMBER 8, 2004. TO HON JANET BOND-ARTERTON.

"I HAVE KNOW PATRICK TRIUMPH AND HIS FAMILY FOR THE PAST SIX YEARS. HE HAS ACTED IN THE CAPACITY OF TAX PREPARER FOR THE PAST SIX SEASONS. I HAVE FOUND THAT THE SERVICES AND THE TRANSACTIONS HE

Rendered were invaluable and satisfactory to the best of my knowledge.

In addition, he has contributed substantial and outstanding services to the community both financially and voluntarily during the course of those years.

Any consideration that can be given at this time would greatly benefit him, his family and the community." (HOPE BRUFF - CLIENT)

LETTER FROM VANS HARPER TO HONORABLE JANICE BOND - ARTERTON dated October 25, 2004.

"IT is with a sense of pride that I stand to attest to the character reference of MR. PATRICK TRIUMPH CR.NO. 3:02CR81(JBA)

I have known PATRICK TRIUMPH for over six years and found Him to be a positive role model and a citizen of his community. He is bright, articulate and intelligent person. He serves the community as a reliable businessman with empowerment to others. He contributes his time, money and service for the improvement of humanity. He sponsors scholarships for minority college children. He sponsors the Rovers Soccer Team, the Titans Football League. He volunteered his time tutoring in high schools. He is a religious and serves the Saint Stephen Episcopal Church in Bloomfield. He served as a

27

director of the Caribbean Network of Businessmen in Bloomfield. He offered a wealth of financial advice to the community. He demonstrates positive attributes as a responsible father and husband.

I appeal to your highest sense of justice towards Patrick Triumph. The community is genuinely depraved by the absence of his service. (Vans Hanper — Client).

" This same caring and comforting figure has been with me at every milestone in my life, except the one that I probably owe most to him. I graduated from Purdue University, West Lafayette on the 7th August, 2004 with a Bachelor of Science in Computer Engineering. It was a day filled with joy as my family surrounded me. All except my uncle. He is the one who started me on the path to success at Purdue. He is the one who financially supported my while I was there for my first two years. He is the one who take me to the airport at 5. a.m to catch my fight to Purdue and was also the one to find me when I had gotten my room (a time when I did not not even know my number, he had found it). Without him, I would not be where I am today, and for this I thank him."
(Clenin McPherson. B. Com. Eng Purdue University).

-28-

Section 5H1.11 of the Sentencing Guidelines states that "civic, charitable, or public service --- and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guide range." Thus, the Guidelines treat charitable works as a discouraged basis for departure. Nonetheless, as explained by the Supreme Court, a court may still depart "if the [discouraged] factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. Koon v. United States 518 U.S. 81, 96, 116 S CT 2035, 135 L. Ed. 2d 392 (1996) (emphasis added). This is clearly such a case. A consistent, committed, conscientious of charitable cause and civic works over a ten year period by the Defendant in the Greater Hartford Community. "He taught church school with a commitment and love of children." "his business activities contributed to the economic welfare of the town of Bloomfield, as he was a high civic minded businessman". "He served as director of a Caribbean network of social and cultural organizations." "Patrick Triumph served his community through dedication to the cause of education, tutoring and human rights, through which the community has seen improvement".

-29-

The Court of Appeals review a district court's decision to depart from the applicable guideline range for abuse of discretion. United States v. Riera, 298 F.3d 128, 132 (2d Cir 2002). We will affirm such a departure if (1) the district court's stated reasons for the departure, reviewed *de novo*, are of a kind or a degree not adequately considered by the sentencing commission and represent grounds that may appropriately be relied upon to justify the departure; (2) the factual findings underlying the reasons are not clearly erroneous, and (3) the extent of the departure is reasonable, giving due deference to the sentencing court, United States v. Fei, 225 F.3d 167, 171 (2d Cir. 200').

Accordingly, the defendant contends that the facts of this case presents the aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the sentencing Commission in formulating the guidelines that should warrant a downward departure. The Court should consider the following.

1. That he has served 19 months of pre-trial incarceration under onerous and draconian prison conditions.

2. That his family is now being forced to depend on family member for financial and emotional support.

3. This his family is financial and

– 30 –

And economically harmed, with no remedial or ameliorative programs are aviable, other than public assistance, making his financial support irreplaceable to his family.

4. The loss of financial and emotional support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant, for example, see United States vs. Greene, 249 F. Supp. 2d 262 (S.D.N.Y 2003), defendant was entitled to seven-level downward departure in sentencing for aiding and assisting in preparation of false income tax returns based on combination of his charitable work / community service and extra ordinary family circumstances, even though both factors were discouraged under sentencing guidelines.

5. That he has been committed, consistent and civicly involved in various charitable work and community service over the past ten years, including the provision of college scholarship programs, work internship, and annual sponsorship ment of the Rovans soccer league. Donating a substantial account of time and money to the community and charitable cause.

-31-

6. THE EXTREME PSYCHOLOGICAL INJURY UPON HIS FAMILY AS A RESULT OF his SON'S UNTIMELY death which has SUBSTANSTIALLY IMPAIRED THE PSYCHOLOGICAL, EMOTION, INTELLECTUAL AND behavioriaL FUNCTIONING OF his chilDREN.

7. THE DEATH OF OUR SON has Triggered A deep depressive episode IN OUR FAMILY. MY WIFE is IN CONSTANT depression AND UNABLE TO FUNCTION ANY LONGER AS A REAL ESTATE BROKER. MY FAMILY HAS NO INSURANCE. NO Medical COVERAGE. NO INCOME. NO ASSETS. They have been EVICTED FROM THE WEST HARTFORD APARTMENT. MY ChilDREN ARE NOW Forced TO seek School IN Another School DISTRICT. They ARE FINANCIALLY DESTITUTE, PSYCHOLOGICALLY INJURED AND EMOTIONAL UNSTABLE.

8. ONLY THOSE who have suffered AND called upon, TO RELINQUISH ONE, who WAS FAR FAR dearer THAN LIFE, CAN UNDERSTAND THE GRAVITY OF THiS SITUATION AND THE IRREPARABLE suffering AND PSYCHOLOGICAL INJURY upon THE ChilDREN, AS A RESULT OF THE UNTIMELY death OF A LOVING BROTHER, PATRICK ANThONY TRIUMPH JR., AND A

- 32 -

Beloved Son, Patrick Anthony Triumph Jr.

9. "Mr and Mrs Triumph's fourth child, Patrick, died during the incarceration of Mr Triumph. From experience I can attest to the fact that, in the case of the loss of a loved one, there must be a period of grieving. I am concerned if Mr. Triumph and his family have had the opportunity to grieve the loss of their loved one. They are a young family and they had to deal with a multitude of profound things in a short time frame. [The Reverend Canon Wilborne A. Austin, Vicar of St. Stephen's Episcopal Church, letter to Honorable Janet Bond-Arterton dated 10/21/04]

10. "For our family not to be able to be together for the final days, hour and minutes of our son's life is still and open wound. For a loving father not to be able to say goodbye to his son, not to pray with him, not to hold and touch him, for our children not to have the comforting arms of their dad when most needed still lives with us." Christine, wife of Mr Triumph expressed feeling of "pain", in letter to Honorable Janet Bond-Arterton dated 10/15/04.

11 "My father does have a loving

FAMILY TO COME HOME TO AND WE ARE WAITING ON HIM." [ A daughter grieving For DAD, my FIRSTBORN, Remila Triumph expressed her EMOTIONS in LETTER TO HONORABLE JANET Bond-ARTERTON, dated Nov, 2004).

THE DEFENDANT SHARES THE LATIN ORIGIN of "COMPASSION" which CONNOTES STRONG EFFECT UPON THE ACTOR OF EXTERNAL CONDITION of THE other. SEE E.g WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY of THE ENGLISH LANGUAGE 451, 462, 1651 (UNABRIDGED ED 1993) (DEFINITIONS of "COM", "PASSION", AND "COMPASSION"). THE OXFORD ENGLISH DICTIONARY Vol III AT 597 (1989) ("SUFFERING TOGETHER WITH ANOTHER". THE FEELING OR EMOTION, when A PERSON is moved by THE SUFFERING OR DISTRESS of ANOTHER ---").

ACCORDINGLY, THE QUESTION is how much, Jo.2 WE ARE INSTRUCTED THAT PUNISHMENT is ADEQUATE if in THE LEAST AMOUNT THAT WILL ADEQUATELY SERVE THE goals TO BE SERVED by CRIMINAL PUNISHMENT, in THIS CASE, primarily THE Goal of DETERRENCE. See 18 U.S.C. 3553 (a). See ALSO, e.g UNITED STATES v. DeRiggi, 893 F.Supp 171, 182 (E.D N.Y) (1995), (Nothing "Judge's duty TO IMPOSE THE LEAST SEVERE SENTENCE TO Accomplish THE Goals OF SENTENCING"). AND PUNISHMENT MUST NOT BE DRACONIAN, THE Judge who SENTENCES MUST BE SENSITIVE TO both THE goals of Society REFLECTED by THE EFFORTS of THE GOVERNMENT,

-34-

# CERTIFICATION OF SERVICE

THIS IS TO CERTIFY THAT THE MOTION FOR DOWNWARD DEPARTURE BASED ON COMBINATION OF EXTRAORDINARY FAMILY CIRCUMSTANCES, COMMUNITY SERVICE AND CHARITABLE WORK, WAS SERVED UPON THE FOLLOWING:

> DAVID A. RING
> ASSISTANT UNITED STATES ATTORNEY
> U.S. ATTORNEY'S OFFICE - N.H
> 157 CHURCH ST. 23RD FLOOR
> NEW HAVEN, CT 06510

BY PLACING A COPY OF SAME IN THE UNITED STATES MAIL WITH PROPER POSTAGE AFFIXED TO ENSURE DELIVERY.

DATED THIS 30TH DAY OF NOVEMBER, 2004

RESPECTFULLY SUBMITTED.

PATRICK A. TRIUMPH