UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES DISTRICT COURT | CASE NO. 3:02CR81(JBA) |
| PLAINTIFF | |
| | SUPPLEMENTAL MEMORANDUM |
| vs. | TO AID SENTENCING |
| | AND DOWNWARD |
| PATRICK A. TRIUMPH | DEPARTURES. |
| DEFENDANT | |

The defendant Patrick A. Triumph, pro se, respectfully submits this supplemental memorandum to aid sentencing and downward departures from the sentencing guides in the circumstances of the above-captioned case.

## Law

A. Sentencing Statute: 18 U.S.C. Section 3553

1. Sufficient but not greater than necessary

(I) Congress restructured the federal sentencing law in the 1980's to create the current Guidelines-based system. See Sentencing Reform Act of 1984. Pub. L. No. 98-473, Section 221, 98 Stat. 1987, 1987-90 (1984). It expressly stated that courts "shall impose a sentence sufficient, but not greater than necessary," to comply with

1

the purposes of criminal sanctions. 18 U.S.C. Section 3553(a). Harshness greater than that required is statutorily prohibited by this portion of the Sentencing Reform Act. Excessive leniency is also forbidden.

2. <u>Seriousness of the offense, adequate deterrence, protection of the public, and correctional treatment.</u>

The Sentencing Reform Act went on to explicitly delineate the purposes of criminal sanctions. Section 3551(a) provides that every defendant "shall be sentenced --- so as to achieve the purposes set forth in subparagraph (A) through (D) of Section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."

Subparagraphs (A) through (D) of Section 3553(a)(2) instruct courts to consider the necessity of the sentence imposed.

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,

(B) To afford adequate deterrence to criminal conduct,

(C) To protect the public from further crimes of the defendant.

(D) To provide the defendant with needed

-2-

educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. Section 3553(a)(2)(A)-(D)

(2) As analysed in Parts II. B and C, infra, (A) above largely constitutes a summary of the just deserts theory and (B), (C), and (D) encompass utilitarian concerns. In creating the sentencing statutes. "Congress spelled out the four traditional justifications of the criminal sentence — deterrence, incapacitation, retribution and rehabilitation — and expressly instructed the sentencing court to keep these purposes in mind." Kenneth R. Feinberg, The Federal Guidelines as the Underlying Purposes of Sentencing, 3 Fed. Sent. Rep. 326, 326 (May/June 1991).

When enforcing the complex federal sentencing scheme, courts are required to consider six factors, subsidiary to the traditional sentencing rationales set out above. See 18 U.S.C. Section 3553(a)(1)-(7). These are: (a) "the nature and circumstances of the offense and the history and characteristics of the offense and the ~~history~~ defendant"; (b) "the kinds of sentence and the available"; (c) "the kinds of sentence and the sentencing range established" by the sentencing guidelines; (d) "the need to avoid unwarrant[ed]

-3-

sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (5) "any pertinent policy statement issued by the Sentencing Commission"; and (6) "the need to provide restitution to any victims of the offense." 18 U.S.C. Sec. 3553(a)(1), (3)-(7).

To understand how these statutory provisions should be applied, a brief review of the theory and background of the purposes of criminal sentences is required.

### B. Traditional Sentencing Rationales

Sentencing is a critical stage of a criminal prosecution. See Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed 2d 393 (1977). It represents an important moment of the law, a "fundamental judgement determining how, where, and why the offender should be dealt with for what may be much or all of his remaining life." Marvin E. Frankel, Criminal Sentences vii (1973). It is significant not only for the individual before the court, but for his family and friends, the victims of his crime, potential future victims, and society as a whole.

Four core considerations, in varying degrees and permutations, have traditionally shaped American sentencing determinations, incapacitation of the criminal, rehabilitation of the offender, deterrence of the defendant

-4-

and of others, and just deserts for the crime committed. See e.g. Harmelin v. Michigan, 501 U.S. 957, 999, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ("the federal and state criminal systems have accorded different weights at different times to the penological goals of retribution, deterrence, incapitation, and rehabilitation.") (Kennedy J., concurring); United States v. Giraldo, 822 F.2d 205, 210 (2d Cir.) ("the proper purposes of the sentencing of criminal offenders are generally thought to encompass punishment, prevention, restraint, rehabilitation, deterrence, education, and retribution."), cert denied, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 465 (1987); see also Charles E. Torcia, 1 Wharton's Criminal Law Section 1, at 2-3 (15th ed. 1993) ("the principle theories of punishment are retribution, deterrence, and reformation."); Andrew R. Klein, Alternative Sentencing: A Practitioner's Guide 1 (1988) ("retribution, reparations, deterrence, and incapacitation, in addition to rehabilitation" are traditional sentencing goals); Andrew Van Hirsch, Doing Justice: The Choice of Punishment xxviii–xxx (1976) (describing restraint of the criminal, deterrence, rehabilitation and desert as traditional "aims to be served in deciding how the law should respond to law breakers"); see generally Sanford H. Kadish and Stephen J. Schulhofer, Criminal Law and its Processes 113-65 (5th ed. 1989) (compilation

-5-

of materials addressing the purposes punishment is though to serve), "Over the last two hundred years, courts have witnessed significant changes in sentencing policy, which have been shaped by the priorities assigned to (these) four competing sanction goals---" Theresa Walker Karle & Thomas Sager, Are the Federal Sentencing Guidelines Meeting Congressional Goals? An Empirical and Case Law Analysis, 40 Emory L.J. 393, 393 (1991); see also Arthur W. Campbell, Law of Sentencing sections 1:1, 1:2, 1:3, at 1-16 (1991) (history and development of sentencing goals and practices).

Ascertaining priorities among these potentially conflicting notions has long been a point of contention amongst legislators, scholars, jurists, and practitioners. Somewhat oversimplifying, there are two basic camps. Retributivists contend that "just deserts" are to imposed for a crime committed. Utilitarians, in their various manifestations, suggest that penalties need to be viewed more globally by measuring their benefits against their costs. "The debate between the desert justifications such as deterrence, incapacitation, and rehabilitation has continued to divide criminal law thinkers---." Paul H. Robinson & John M. Darley, The Utility of Desert, 91 Nw. U. L. Rev. 453, 455 (1997).

Implied in this debate are questions about our basic values and beliefs: Why do we impose punishment? Or is it properly to be named "punishment"? Is our

purpose retributive? Is it to deter the defendant himself or others in the community from committing crimes? Is it for reform? Rehabilitation? Incapacitation of dangerous people? Questions like these have engaged philosophers and students of the criminal law for centuries.

Criminal Sentences, supra, at 1 (1973); see also, e.g., Matthew A. Pauley, The Jurisprudence of Crime and Punishment from Plato to Hegel, 39 Am J. Juris. 97, 99 (1994) ("Very few contemporary books or articles on punishment tell us much about how some of the great philosophers approached these questions...").

In the nineteen and most of the twentieth century American prison and punishment system reforms were designed primarily to rehabilitate the prisoner as a protection against further crime. See Adam J. Hirsch, The Rise of the Penitentiary: Prisons and Punishment in Early America 114 (1992) ("Carceral ideology was conventional in that it remained focused on the goal of crime control and socially progressive, in that it sought to reduce offenses by enabling criminals to better themselves."). In more recent years there has been a perception by many that attempts at rehabilitation have failed; a movement towards theoretically-based, more severe, fixed punishment based upon the nature of the crime gained momentum. See Law of Sentencing, supra, at 32

-7-

("by 1990 rehabilitation was replaced by retribution as the dominant sentencing rationale in this country"). Two eighteenth and nineteenth century philosophers set the terms of the current late twentieth century debate.

### 1. Kant's Retributive Just Deserts Theory

Immanuel Kant, born in East Prussia in 1724, is regarded by some as "one of the most important philosophers in West culture." Diane Collinson, Fifty Major Philosophers: A Reference Guide 89 (1992); see also, e.g., Immanuel Kant, Critique of Pure Reason (Vasilis Politis ed. & trans., Everyman's Library 1994) (1781); Immanuel Kant, The Moral Law (Kant's Groundwork of the Metaphysics of Moral), (H.J. Paton ed. & trans., Hutchinson Univ. Library 3d ed. 1965) (1785). On the ascendency of Law, he wrote:

"Duty is the necessity to act out of reverence for the Law --- thus, the moral worth of an action does not depend on the result expect from it and so too does not depend on any principle of action that needs to borrow its motive from the expected result --- nothing but, the idea of the Law in itself --- can constitute that preeminent good which we call moral, a good which is already present in the person acting on this idea ---

The Moral Law, supra, at 68-69 (italics omitted) It is said that "Kant accepted as fundamental

-8-

the principle... that the only absolutely good thing in the universe is the human will governed by respect for the moral law or the consciousness of duty." S.E. Frost, Jr., Basic Teachings of the Great Philosophers 94 (Anchor Books Rev. ed. 1989). Kant's anti-utilitarian thesis on criminal penalties is reflected in an oft-cited passage from his work, The Metaphysical Elements of Justice:

Juridical punishment can never be used merely as a means to promote some other good for the criminal himself or for civil society, but instead it must in all cases be imposed on him only on the ground that he has committed a crime; for a human being can never be manipulated merely as a means to be the purpose of someone else and can never be confused with the objects of the Law of things.

Immanuel Kant, The Metaphysical Elements of Justice (Part I of the Metaphysics of Moral) 100 (John Ladd ed. & trans., Bobbs-Merrill Co. 1965)(1797). It follows from this position that the sole justification for criminal punishment is retribution or "justalionis." See Huntington Cairns, Legal Philosophy From Plato to Hegel 453 (4th prtg. 1966); see also ___ Pugsley, A Case Against the Kantian Retributivist Theory of Punishment. A Response to Professor Pugsley, 11 Hof. L.R. 273, 274 (1982) ("Immanuel Kant... held that only a retributivist theory is properly responsive to the

-9-

criminal's dignity as a rational agent capable of moral conduct, a dignity which he retains despite his commission of a legal offense.").

The average man and woman on the streets of New York, struggling to exist with some dignity, would hardly recognize as words to live by Kant's merciless doctrine.

The law concerning punishment is a categorically imperative, and woe to him who rummages around in the winding paths of a theory of happiness looking for some advantage to be gained by releasing the criminal from punishment or by reducing the amount of it — in keeping with the Pharisaic motto: "It is better that one man should die than the whole people should perish." If legal justices perishes, then it is no longer worth while for men to remain alive on this earth.

Metaphysical Elements of Justice, supra, at 100

For Kant and his adherents, "punishment that gives an offender what he or she deserves for a past crime is a valuable end in itself and needs no further justification." The Utility of Desert, supra at 454.

"It is not inflicted because it will give an opportunity for reform, but because it is merited." Edmund L. Pincoffs, The Rationale of Legal Punishment 7 (1966). Kantian "just deserts" theory, therefore, focuses almost exclusively on the past

-10-

to determine the level of punishment that should be meted out to right the wrong that has already occured as a result of the defendant's delict. See Pauley The Jurisprudence of Crime and Punishment From Plato to Hegel, supra at 97.

Some softening of this cold and relentless rigidity by simultaneously integrating the Benthamite Utilitarian approach is possible.

## 2. Bentham's Utilitarian Theory.

Jeremy Bentham, an English philosopher born in 1748, advocated a far different, more prospective approach through his "Principle of Utility." Fifty Major Philosophers, supra, at 94. For him, law in general, and criminal jurisprudence in particular, was intended to produce the "greatest happiness for the greatest number," a concept sometimes referred to as the "Felicity calculus." Ed.

This is not to say that Bentham did not believe in sanctions. It was his view that punishment was sometimes essential to ensure compliance with public laws. See Jeremy Bentham, Bentham's Political Thought (167-68) (Bhikhu Parekh ed., Harper & Row 1973) ("For the most part, it is to some pleasure or some pain drawn from the political sanction itself, but more particularly --- to pain that the legislator trusts for the effectuation of his will."); see also Sanford H. Kadish and Stephen

-11-

J. Schulhofer, Criminal Law and its Processes 144 (5th ed. 1989) ("Bentham sees punishment as the deliberate infliction of pain and suffering but justifies it as a necessary evil when the good it produces overall outweighs its harmful effects.").

Unlike his contemporary, Kant, Bentham was not interested in a criminal punishment as a way of avenging or cancelling the theoretically wrong suffered by society through a deviation from its norms. Rather, a criminal sanction was to be utilized only when it could help ensure the greater good of society and provide a benefit to the community. See Rationale of Legal Punishment, supra at 20 (criminal penalties, like other legislation, are meant to further the contentment of society). Bentham's writings in An Introduction to the Principles of Morals and Legislation explain this theory:

--- All punishment is mischief. All punishment in itself evil. Upon the principle of utility, if it ought at all to be admitted, it ought only to be admitted in as far as it promises to exclude some greater evil --- in the following cases punishment ought not to be inflicted.

    1. Where it is groundless: where there is no mischief for it to prevent; the act not being mischievous upon the whole.

    II. Where it must be inefficacious: where it

-12-

cannot act so as to prevent the mischief.

III. Where it is unprofitable, or too expensive; where the mischief it would produce would be greater than what it prevented.

IV. Where it is needless; where the mischief may be prevented, or cease of itself, without it; that is, at a cheaper rate.

Jeremy Bentham, An Introduction to the Principles of Morals and Legislation, excerpted in The Great Legal Philosophers; Select Readings in Jurisprudence 262, 270 (Clarence Morris Ed., 1959).

Under the Benthamite approach, deterring crime, as well as correction and reformation of the criminal, are primary aspirations of criminal law. See The Jurisprudence of Crime and Punishment from Plato to Hegel, supra at 136; see also United States v. Cordoba-Hincapie, 825 F. Supp 485, 493 (E.D.N.Y. 1993) ("Bentham focused upon proportionality and deterrence as goals of sentencing"). "While the theory of retribution would impose punishment for its own sake, the utilitarian incidents of deterrence and reformation would use punishment as a means to [a practical] end — the end being community protection by the prevention of crime." Wharton's Criminal Law, supra, at 5.

§ Sanctions in State Courts: Retributivist and Utilitarian Models.

Given the divergence in underlying assumptions and theory, the competing retributivist and

-13-

utilitarian theories suggest methods for ascertaining proper penalties. Under a Kantian model, the extent of punishment is required to neatly fit the crime. "Whoever commits a crime must be punished in accordance with his desert." Pincoffs The Rationale of Legal Punishment, supra at 4.

In the case of murder, some believe that just desert is clear. A taker of life must have his own life taken. Great Legal Philosophers, supra at 258 ("Whoever has committed murder, must die."). Even in the case of killings, however, there are degrees of mens rea, and over large portions of the world capital punishment is outlawed on a variety of just deserts and utilitarian grounds. See Herbert Wechsler & Jerome Michael, The Rationale of the Law of Homicide to avoid "gratuitous cruelty" in sentencing); cf. Alan I. Bigel, Justices William J. Brennan, Jr. and Thurgood Marshall on Capital Punishment. Its Constitutionality, Morality, Deterrent Effect, and Interpretation by the Court, 8 Notre Dame L.J. Ethics & Pub. Pol'y 11, 44 (1994) (Statistics show that utilization of death penalty does not significantly lower murder rates).

For lesser offenses reaching a consensus on the proper "price" for the criminal act under the Kantian approach is even more difficult. As one scholar has written:

The retributivist can perhaps avoid this question

-14-

of how we decide that one crime is morally more heinous than another by hewing to his position that no such decision is necessary so long as we make the punishment "equal" to the crime. To accomplish this, he might argue, it is not necessary to argue to the relative wickedness of crimes. But at best this leaves us with the problem of how we do make punishments equal to crimes, a problem which will not stop plaguing retributivists. Edmund L. Pincoffs, The Rationale of Legal Punishment, supra, at 6.

Two main theoretical problems are presented by this just deserts approach. The degree of the earned desert — that is to say the extent or length of the appropriate punishment — is subjective. The upper and lower limits of the punishment can be very high or very low, justified on personal views and taste. The "earned" punishment may be quite cruel and do more harm to society, the criminal, and his family, that can be justified on utilitarian grounds.

Determining the appropriateness of sanctions differs under Bentham's utilitarian approach, although it too poses challenging theoretical and practical tasks for the sentencer under this model, namely:

The factors (to be considered) are the need to set penalties in such a way that where a person is tempted to commit one or two