UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT   NEW HAVEN

6/27/ 20 05
Kevin F. Rowe, Clerk
By _____

| | |
|---|---|
| United States of America, Plaintiff, | Case No. 3:02cr81(JBA) |
| vs | DEFENDANT'S SUPPLEMENTAL MEMORANDUM TO AID SENTENCING |
| Patrick A. Triumph, Defendant. | |

The Defendant Patrick A. Triumph, pro-se, respectfully submits this Supplemental Memorandum to Aid in the Resentencing proceedings scheduled for June 27, 2005, at 10:00 AM. The purpose of this Supplemental Memorandum is to further articulate the Defendant's position that the sentence of thirty-three (33) months imprisonment was imposed in violation of the Fifth and Sixth Amendments of the Constitution of the United States of America. Additionally, the Defendant asserts that he has been incarcerated for approximately thirty (30) months to date which is "unreasonable and excessive", when considering the presentence report "Sentence Guigeline" calculation of 18-24 months imprisonment, as well as, the "reasonable" application of the now "Advisory" United States Sentencing Guidelines range in the light of the factors outlined in 18 U.S.C. Section 3553(a).

This Memorandum is intended to supplement the Defendant's prior Memorandum filed in connection with the Sentencing Hearing conducted on December 15, 2004, as well as to explicate the constitutional basis of the legal and factual issues arising from the Supreme's Court recent decision in United States v. Booker, 125 S.Ct 738 (2005) and the Second Circuit Court of Appeals decision in United States v. Crossby, 397 F.3d 103, 118-20 (2nd Cir. 2005), pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

1. PRELIMINARY STATEMENT

The Defendant incorporates by reference to the Sentencing Memorandum of December 15, 2004 and all subsequent Memoranda filed in connection with the Resentencing, which sets forth the procedural history of this case and summarizes

the offense conduct. Notably, the Defendant's Memorandum sets forth the defendant's "Advisory" Resentencing Guidelines calculation and the mitigating sentencing factors enumerated in the provision in Section 3553(a), in order to determine whether there is any reason to deviate from the Guideline Range.

In sum, the Defendant concurs with the Probation Office's Guideline Calculation as contined in the "PSR" and, coalesce with the District Court Judge that "if the supreme court were to find that this sentence imposed under the guidelines was unconstitutional, ... then [we] will have a basis to do the resentencing. So [you] have a Perfect Record..." See, Sentencing Transcript Vol1, Page 13-14 (Dec .15, 2004).

The Record of the Sentence Hearing is absolutely and conclusively clear that Triumph asserted that the sentence was imposed in violation of Law because it was rendered to an unconstitutional sentencing guideline scheme. Accordingly, the defendant argues that the United States Sentencing Guidelines violate the Fifth and Sixth Amendments, as well as, the requirements set firth in Blakely/ Apprendi. The Defendant expects to offer additional arguements to further substanitate these contentions at the resentencing hearing on June 27, 2005.

QUESTION PRESENTED: Whether Triumph's sentence imposed imposed in violation of the requirements set forth in Blakely/ Apprendi.

ANSWER: AFFIRMATIVE.

The Booker court answered the question in the majority "Substantial" opinion.

(a) Where defendant was sentenced for a crime prior to January 12, 2005, the Supreme Court in United States v. Booker, 125 S.Ct 738 (2005), held "that the Sentencing Reform Act" violated defendants' Fifth Amendment rights, because it required judges to find Enhancing Facts which increase the maximum sentence to which defendant's are exposed by a "preponderance of the evidence", rather than "beyond a reasonable doubt", standard and did not limit the sentence calculation to "Facts charged in the Indictment." The Fifth Amendment of the United States Constitution in pertinent part states.

> " No Person shall be held to answer for a capital or
>    otherwise imfamous crime, unless on the presentment
>    or indictment of a Grand Jury... Nor be deprived of

>Life, Liberty, or Property, without Due Process of
>Law..."

(b) Where defendant was sentenced for a crime prior to January 12, 2005, the Supreme Court in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), held "that 'Federal Sentencing Reform Act' violated the Sixth Amendment Rights, because it required judges, not juries, to decide factors which increased the Statutory maximum sentences to which defendants are exposed." The Sixth Amendment to the United States Constitution, in pertinent part states:

>"In all criminal prosecutions, the accused shall enjoy
>the right to a speedy and public trial, by an impartial
>jury of the State and District wherein the crime shall
>have been committed..."

Accordingly, under the Due Process of the Fifth Amendment, the Prosecutor is required to proved every element of the crime with which a defendant is charged beyond a Reasonable doubt. The defendant must be acquitted if the Government fails to sustain its burden of proof. See <u>In re Winship</u>, 397 U.S. 358, 364 (1970). Also, see <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 278 (1993). The <u>Winship</u> reasonable standard protects three interests. First, it protects the defendants interest in being free from unjustified loss of liberty. <u>See</u> 397 U.S. at 363. Second, it protects the defendant from the stigmatization resulting from conviction see <u>id</u>. Third, it engenders community confidence in criminal law by giving "concrete substance" to the presumption of innocence. <u>Id</u>. at 363-64.

Additionally, in <u>Jones v. United States</u>, 526 U.S. 227, 243 n.6, 119 S.Ct. 1215, 1214 n.6 (1999), the Supreme Court made clear the following principle: "[U]nder the Due Process Clause of the Fifth Amendment and the Notice and jury trial guarantees of the Sixth Amendment any Fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven Beyond a Reasonable Doubt ." (Emphasis added). In <u>Apprendi</u>, the Supreme Court confirmed its opinion in <u>Jones</u> and further elaborated on the principle,"other than the fact of a prior conviction, any Fact that increases the penalty for a crime beyond the Statutory maximum must be submitted to a jury, and proved beyond a Reasonable Doubt." <u>Apprendi</u>, 530 U.S. at 490, 120 S.Ct.at 2363. Moreso, in <u>Blakely v. Washington</u>, 124 S.Ct 2531 (2004), the Supreme Court reaffirmed the principle and provided additional

clarification for the term Statutory Maximum. In other words, the relevant 'Statutory Maximum' is not the maximum sentence a Judge may impose after finding additional Facts, but the maximum he or she may impose without any additional Findings." Blakely, 124 S.Ct. at 2536 (Emphasis in original). Further, in Booker, 125 S.Ct 738 (2005), the majority unambiguously affirmed that "Blakely" is applicable to the Federal Sentencing Guidelines. Moreso, the Blakely court determined that any enhancement that increased the sentence beyond the Sentencing Guideline "Base Offense Level" is consider an element. Supreme Court precedent and the Indictment Clause of the Fifth Amendment requires that an Element must be charged in the Indictment before a defendant can be found guilty of that Element, whether based on a jury verdict or a guilty plea.

### WAS THERE A ERROR IN THE DECEMBER 15, 2004 SENTENCING ?

The Question in the instant case, United States v. Triumph, is to which category of the present ERROR belongs. The defendant argues that the erroneous jury instructions in this case for the proof of the elements "Beyond a Reasonable Doubt" constitutes a Structural Error requiring reversal and precluding harmless error analysis. Accordingly, as in Cage v. Louisiana, 498 U.S. 39, 112 L.Ed.2d 339, 111 S.Ct. 328 (1990), the jury instruction should be ruled unconstitutional if there is , a reasonable likelihood the jury understood, or lack thereof, to allow a conviction without proof "Beyond a Reasonable Doubt". Moreover, in order for the Triumph Jury to have been properly instructed, the charge would have to include instructions that Jurors must conclude that Triumph was in fact responsible for the attributable "Tax Loss" amount of Forty Thousand ($40,000) and greater, as charged in the Superseding Indictment.

The only relief from "Structural Error" is for, as in United States v. Triumph, is to preclude the "Tax Loss" from the Sentencing calculation in the net computation of the Offense Level. In fact, on September 16, 2004, (see Trial Transcript, Volume X11) the District Court charged the Jury beginning at N.T. Page 2609 with the "Special Findings" See U.S.S.G. 2T1.1. Simply put the Jury was firmly instructed to determine all elements of each count charged, and determine the "Tax Loss" (internal Quotations) to the United States. It is clearly established from the Jury verdict that the Amount determined was $6,121.00, and not (emphasis added) $37,002.00. As found by this Court when introducing the "Preponderance of the evidence" which has been found no longer binding as of

Case 3:02-cr-00081-JBA    Document 434    Filed 06/27/2005    Page 6 of 18

January 12, 2005. See Booker, supra. ( attached see Exhibit 1 and 2). Additionally, the Defendant argues that the Tax Loss amount of "Less than Forty Thousand" constituted an Amendment to the Grand Jury Indictment and must be precluded from the Sentencing Calculation "Enhancememt" upon the grounds of Constructive Amendment to Grand Jury Indictment.

Hence, a erroneous jury instruction allowing jury to convict on less than reasonable doubt not subject to harmless error analysis. See, Vargas v. Keane, 86 F. 3d 1273, 1276 (2d. Cir 1996). The Supreme Court in Sullivan v. Louisiana, 508 U.S. 275 (1993), held that the interrealation of the Fifth Amendment requirement of proof Beyond a Reasonable Doubt and the Sixth Amendment requirement to a Jury Verdict mandate that a constitutional deficient reasonable doubt jury instruction be deemed a structural defect in the Trial mechanism.

### CONSTRUCTIVE AMENDMENT

The Defendant argues that the Court erred in denying the Motions to Dismiss Counts 5,6, 7, 8, and 32 and the Obstruction of Justice enhancement as related to Counts 5, 6, 7 and 8 upon the grounds of Constructive Amendment. (See attached Exhibits 3 and 4).

The Fifth Amendment guarantees a defendant the right to be tried for only those offense presented by a Grand Jury. Substantive Amendment to Indictment are reversible error. By attempting to alter the language of the indictment, the prosecutor is seeking to usurp the constitutionally guaranteed role of the Grand Jury and creating a substantial Risk that the defendant was convicted of an offense not charged in the indictment. The prosecutor's effort to disregard the Grand Jury finds no refuge in the nation's court system. See Stirone v. United States, 361 U.S. 212, 217. 4 L.Ed 252, 805 S.Ct. 270, 273 (1960) (unanimous decision) which held that "consistent with the Grand Jury Clausea defendant may be tried and convicted only on those charges contained in the Indictment by a Grand Jury. Accord Russel v. United States, 369 U.S. 749, 770, 8 L.Ed. 2d 240, 82 S. Ct. 1038, 1050 (1962) (same); In Ex parte Bain, 121 U.S. 1, 10, 30 L.Ed. 849, 7 S.Ct. 781, 786 (1887) determined that "right to an indictment by a Grand Jury may be destroyed if the court has the power to change indictment to its own notions or infer what Grand Jury should have done.

Moreso, the Second Circuit in United States v. Frank, 156 F.3d 332, 337 (2d. Cir. 1998) held that "[t]o prevail on a constructive amendment claim, a defendant must demostrate that either the proof at trial or the Trial court's jury instructions so altered an essential element of the charge that, upon review,

Case 3:02-cr-00081-JBA    Document 434    Filed 06/27/2005    Page 8 of 18

it is uncertain whether the defendant was convicted of conduct that was the subject of the Grand Jury Indictment." Also see, United States v. Mucciante, 21 F. 3d 1228, 1233 (2d Cir. 1994) where the determined that "the defendant has been Constructively Amended, there is a per se violation to Grand Jury Clause and the conviction on the amended counts maust be reversed.  In additional, the defendant argues that the Obstruction of Justice enhancement  esententially charged the same offense was in Count 39 (Obstruction of Justice) in violation of the Double Jeopardy Clause of the Fifth Amendment. Accordingly, the Obstruction of Justice enhancement must not be component of the "Net" Offense Level.  Finally, the defendant contends that the Didtrict Court is required to examine both the original filed before the Bar of Statute of Limitations and the superseding Indictment, filed after statute of limitation had run, to be sure that the superseding indictment did not broaden or substantially amended charges in the first. See United States v. Wilsey, 458 F.2d 11, 12 (9th Cir. 1972) (per curiam); United States v. Strewl, 99 F.2d 474, 477, (2nd Cir. 1938) cert. denied, 306 U.S. 638, 59 S.Ct. 489, 83 L.ed. 1039 (1939).

### SENTENCING ENHANCEMENT:

In this case the defendant objected to the sentencing enhancement in writing prior to the sentencing hearing and pressed the objection at the sentencing hearing. See sentencing Transcript Vol 1 & 2, Pg 13-14 (Dec 15, 2004). The Defendant argued that the government failed to meet the burden of proof. Id at 13-14. Significantly, the government conceded at the Sentencing and the Trial proceedings that it did not believe that it could prove "beyond a Reasonable Doubt" that the "Tax Loss" to the United States was $40,000.00 and greater. The application of the sentencing enhancement preserved the issue for this "RESENTENCING", and should be viewed as preserving the issue on an error of law standard to the extent that the issues in Blakely/Booker are now argued. In addition, where the governing standards of the law at the time of Trial were viewed differently than they are now, and at the time of resentencing consideration, the error should be viewed as "Structural" and that error should be found to be prejudicial, affecting substantial rights. Further, in the case at bar the defendant contested the factual basis for any findings and argued that the government had failed to sustain the burden of proof as imnposed by law. Mr Triumph objected to the sentencing enhancement as being wrongly applied and unsuported by the facts at every opportunity. There was no doubt that the factual and legal issues were disputed, and that the government did npt sustain its burden of proof to

-6-

beyond a Reasonable Doubt to support the sentencing enhancements. The Error was was Structural, it affected substantial rights to have "elements" of the offense established beyond a reasonable doubt, and the error affected the fairness, integrity and public reputation of the Judicial proceedings. See. Sullivan v. Louisiana, 508 U.S. 275, 281 (1973) (error in reasonable doubt instruction is structural error requiring reversal and not subject to harmless error analysis. In United States v Crosby, 397 F.3d 103, 118-20 (2nd Cir. 2005), the Second Circuit Court of Appeals held that any case in which a defendant appeals a sentence imposed prior to the Supreme Court's Booker decision, the district Court committed "Error" if it imposed sentence in conformity with the then binding view that the United States Sentencing Guidelines were mandatory. Moreso, in the aftermath of Booker and Crosby, the Second Circuit in United States v. Fagans, No. 04-4845-cr (2005) held that "the case should be remanded for resentencing because the District Court understandably but erroneous applied the Guidelines in a compulsory manner and the Defendant preserved his objection to that error, and the procedure for applying plain-error analysis that set forth in Crosby is inapplicable.

### CRIMINAL HISTORY CATEGORY

The Defendant incorporates by reference to the Memorandum of the sentencing hearing of December 15, 2005, the issues and objections to the sentence computation based on a Criminal History Category of 111. Essentially, the Defendant contends that the State convictions violated the United States Constitution in that he never understood what charges he was pleading guilty to, because the record does not reflect that either the Court or defense counsel explained the elements of the offenses, and because the facts were insufficient to provide a factual basis. As such, a conviction lacking an adequate factual basis vioaltes due process. See Bousley v. United States, 523 U.s. 614, 618 (1998) (remanding where defendant's plea predicated on misunderstanding of proof essential to show "use" of a firearm). "A plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him", the first and most universal requirement of Due Process. See, Smith v. O'Grady, 312 U.S. 329, 334, 85 L.Ed. 859, 61 S.Ct. 572 (1941). Additionally, the defendant disputes the findings that he was on "Probation" at the time of the alleged offense in the State of Connecticut in 1994, resulting in a two point enhancement to the Criminal History Category. The Defendant contends that the probation was terminated in April 1994, and absent any report

from the probation department to the contrary, this added enhancement must be invalidated. Further, the defendant contends that it would be fundamental unfair, prejudicial and a miscarriage of justice if the district applies any enhancement without any factual findings, by clear and convincing evidence, in the light of United States v. Booker, 125 S.Ct. 738 (2005) and United States v. Shepard, 544 U.S. ___ (2005). The defendant respectfully request that this court consider the factual finding needed to validate the computed Criminal History, and further request a copy of the Probation Officer report in support of the Probation status at the time of the Alleged 1994 State offense.

POST-BOOKER SENTENCING.

The Post-Booker, advisory Guidelines regime is a completely new universe for Federal Sentencing Court. It is not a return to the pre-guidelines era of unfettered discretion, yet it is less restrictive than the mandatory Guideline system in the sentencing Jurisprudence. It accordingly falls somewhere along the continuum between indeterminate and determinate sentencing, because district courts must calculate and consider the guidelines, yet are bound by them. Nonetheless, there currently exists little uniformity to the approach taken by different Federal Circuit. As such, the most important question in the new Advisory regime is how much confidence to place in the advise of the Guidelines. Booker, 125 S.Ct at 787-88. ("How will a Judge go about determining how much deterence to give to the applicable Guidelines range?") (Stevens, J., dissenting inpart). It is the responsibility of the districts court to develop principled methods for addressing this question and determining how much weight to put in the advisory Guideline range , especially in the light of 3553(a) factors that must be consider. The reasonable-doubt standard, as a measure of reliability, seems especially well-suited to the task of determining how much faith should be place in the Guideline advice.

Moreover, the burden of proof represents a substantive embodiment of social values regarding a risk of error. Furthermore, "standards of proof are important for their symbolic meaning as well as for their practical effect." Addington, 441 U.S. at 426, 99 S.Ct 1084; See also In re Winship, 397 U.S at 370, 90 S. Ct. 1068 ("Although the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he or she is expected to have in the correctness  of his or her factual conclusions.") (Harlan, J, concurring). The reasonable-doubt standard in particular serves as a reminder and a message that "[i]n the administration of criminal justice, our

-8-

Case 3:02-cr-00081-JBA    Document 434    Filed 06/27/2005    Page 12 of 18

society imposes almost the entire risk of error upon itself." <u>Addington</u>, 441 U.S at 423-24, 99 S. Ct. 1804. As a tool for reducing the risk of error, reasonable doubt retains its usefulness in the advisory regime. As Justice Harlan noted in his concurrence in <u>Winship</u>, the chosen standard of operates "to instruct the fact finder concerning the degree of confidence our society thinks he or she should have in the correctness of factual conclusions for a particular type of adjudication." (Harlan, J., concurring).

Clearly, the practical effect of factfinding at sentencing, even under the the advisory regime, is most often to increase a defendant's period of incarceration based on findings made by a preponderance of evidence. Th erisk of error is not insignificant or inconsequential. Even though the defendant theoretically exposed to the maximum prison term allowed by statute, an erroreous factual determination regarding relevany conduct at sentencing will likely result in along period of incarcerationthan if the determination were not made. It therefore seems important to consider the risk of error when calculating the advisory range of incarceration. The reasonable-doubt standard presents a useful tool for closing the margins of error in this context. Moreso, the reliability of the advice helps inform that determination and reliability are best quantified through an appropriate standard of proof. Specifically the defendant argues that the reasonabable-doubt standard offers a useful method for measuring the degree of certainty that in the factual determination underpinning the Advisory guideline range. <u>See</u>. <u>Addington v. Texas</u>, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed. 2d 323 (1979). Notably, on any appeal taken in the post-Booker regime, the sentence imposed by the district Court, or new sentence imposed, will be reviewed, in accordance to <u>United States v. Booker</u>, for REASONABLENESS. See 125 S.Ct. at 765-66.

FURTER, THE Defendant argues that whatever the constitutional limitations on the advisory sentencing scheme, it can never be "reasonable" to base any increase in his sentence on facts that have not been proved beyond a reasonable doubt. Moreover, to comply with a reasonable sentence, the district court must afford the Defendant the procedural protection under the Fifthand Sixth Amendments in connection with any fact on which the government intends to increase the sentence. <u>See</u> <u>Burns v. United States</u>, 501 U.S. 129, 138-139 (1991). Thus, the Due Process Clause is implicated whenever a judge determines a fact by a standard lower than beyond a reasonable doubt in that factual finding would increase the punishment above the Lawful maximum that could have imposed absent that fact.

## ANY INCREASE IN SENTENCE SHOULD BE PROHIBITED

In concluding the new announced rule of law in Booker, the court relied upon, inter alia deeply rooted common law which prohibits an increase in sentence upon remand, or re-trial. North Carolina v. Pearce, 395 U.S. 711 (1969) unless the appearance of vindictiveness is eliminated. The Court too taught that if the sentencing court would adhere to any lesser degree would place a criminal defendant appeal in jeopardy to enhanced punishment and would be found to be a flagrant violation of, as here, the defendant's Sixth Amendment rights , Pearce, supra, relying on Nichols v. United States 106 F.2d 672. The extreme circumstances discussed in Pearce have no application in United States v. Triumph in that to increase his sentence  he would have to have become culpable in another criminal matter since December 15, 2004 or the United States would have to (now) re-indict defendant on yet new and district charges. No set of such circumstances can be offered by the United States. Pearce, supra. All courts have held that to sentence a man to one day more than what he originally recieved is not punishment for the crime, but for exercising his constitution right to appeal. Also, See Marks v. United States, 423 U.S. 188 (1977), which holds that Due Process protects a Defendant drom the effects of judicial rewriting of statutes when that rewriting occured "after" a defendant committed his or her crimes, more or less in the same way that the Constitution's ExPost Facto protects against adverse retroactive legislative. See Garner v. Jones, 529 U.S. 244 (2000), and Miller v. Florida, 482 U.S. 423 (1987).

## CONSIDERATION FOR FURTHER RELIEF

Courts must still "consider" the guidlines ranges as well as bases for departurs from the guideline range. The Defendant incorporates the Motions for Downward Departures presented at the Sentencing Hearing on December 15, 2004. Further, the Defeendant submits that the fabric of his family structure is very improverish, delicate and fearfully vunerable as the defendant's wife can no remain in gainful employment and must continue to rely on family members for mere subsistence.

Pursuant to the now "Advisory" Guidelines  18 U.S.S. G.; 5H1.6 & 5H1.11 provides a just remedy in circumstances such as the one presented to this Honorable Court wheB the defendant is the "sole" moral, spiritual, emotional and financial supporter of the Family. Moreso, the Psycholical impact of the Death of the Defendant's son is still a significant pain in the family. Hence, the

Court may consider that continued "imprisonment" is a tradegy for [his]vulnerable children. See <u>United States v. Ochoa-Sqarez</u>, 2005 U.S. Dist Lexis 1667, at 5 (S.D.N.Y. Feb 7, 2005) (Keenan J.,). Also see <u>United States v. Greene,</u> 249 F.Supp 2d 262 (S.D.N.Y.. 2003): Also see. <u>United States v. Peterson</u>, 363 F.Supp.2d 1060 (E.D.Wis. 2005). For all of the above reasons and compassion the defendant prays that this court consider these motions in accordance to the mandate of the Advisory guidelines.

### DETERMINATION OF DEFAULT JUDGEMENT

The Defeendant contends that <u>Blakely/Apprendi</u> applies to the Default Judge of the Fine of $75,000.00 (Seventy-five thousand dollars) imposed upon the defendant. In the Light of Booker and the now advisory sentence Guidelines, the Bail forfieture as aresult of the Default Judgement constituted a Due Process Violation under the Fifth and Sixth Amendment. Accordingly, Rules 55(C) of the Federal R. Civ. P provides for "Good Cause" shown the Court may set aside an entry of Default and, if a Judgement by default has been entered, may likewise set aside it in accordance with Rule 60(b). Here, The Defendant respectfully ask the Court to consider the individual circumstances of this case. See <u>Enron Oil Corp v. Diakuhara</u>, 10 F.3d 90-95 (2nd Cir. 1993).

The "Individual circumstances" have been imprinted within the meaning of "Good Cause" <u>See</u>: <u>In re Chalasdani</u>, 92 F.3d 1300, 1307 (2nd Cir. 1996), citing <u>In re Men's Sportwear Inc.</u>, 834 F.2d 1134, 1138 (2nd Cir. 1987). This Circuit has embraced the following factors in determining a Motion to vacate for "Good Cause", (1) The Willfullness of the default; (2) The potential prejudice to the Adversary; (3) The presentation of a merirorious defense. See <u>United Parcel Service of America v. Net, Inc.</u>, 185 F.Supp. 2d 274 (E.D.N.Y. 2002). The Defendant turns first to the Qualification of "Willfulness" which does not (empasis provided) include "Careless or negilent errors", <u>See</u> <u>America Alliance</u>, 92 F.3d at 60. In <u>Triumph</u>, the Defendant was found by the District Court on February 25, 2004 to be "Mentally Ill" and unable to assist counsel in defense." Due to the Ruling the Defendant was removed to a Bureau of Prisons Mental Facility until such time that the defendant was found fit to stand trial. Accordingly, by the introduction of the Courts findings of "Mental Illness" the Default Judgement should be "Moot" as per Federal R. Civ. Procedure 55(b)(1)(2) which provides in pertinent part that no judgement in Default shall be entered against an incompentent person. <u>See</u>: <u>Hitz v. Jencks</u>, 123 U.S. 297 (1887). Clearly, there can be no findings or neligence relevant to the Defendant.

-11-

The next factor, "Meritorious Defense" will incorporate the arguments set forth in factor one (1), i.e.. "Mental Illness", See. Federal R. Civ. P. 55 (b)(1)(2). See Davis v. Musler, 713 F.2d 907, 915 (2nd Cir. 1983) (A discussion of the "Three factors", quotating America Alliance Ins. Co. v Eagle Ins. Co. 92 F.3d 57, 58 (2nd Cir. 1996) in the original. Lastly "potential prejudice" cannot be argued by the United States in that upon their own Motion, Count Forty (40) of th Superseding Indictment which charges Failure to Appear was dismiss by the Court on January 5th, 2005. By now vacating this default judgement there will be no prejudice attached. See Davis, 713 F.2d. at 916. United States Parcel. supra. Moreso, the Courts have consistently recognized that forfeiture serves, at least in part to punish as instantly, the owner. See; J.W. Goldsmith - Grant Co. V United States, 254 U.S. 511 (1921). The Supreme Court in United States v. Halper determine that "certain civil action s constitutes "punishment" under Halper in violation of the Eight Amendment excessive Fines. " Civil contempts are sometimes civil in name only, entailing what are inreality criminal."Wyman v. Uphaeusy, 360 U.S. 72 (1959).

Further, the Second Circuit strongly prefeers dispute determination on the merits and directs district Court to resolve any doubts regarding vacatur of default in favor of a trial on the merits. See Shah v. New York State Department of Civil Service, 168 F.3d 610, 615 (2nd Cir. 1999); Cody v. Mello, 59 F.3d. 13, 15 (2nd Cir. 1995); Enron Oil, 10 F.3d at 15. Also, the Second Circuit has recognised that dismissal is a harsh penalty to be utilized only in extreme siyuation." Cody, 59 F.39 at 13-15, with this in mind the Circuit has taught that doubts resolve in Defendant's favor in so that the case resolved on the merits. See, Enron oil, 10F.3d at 95-95 .

For all of the reason set forth in the subsection, the Defendant prays his relief be grant in that (1) the Judgement in Default be set aside, and (2) the sums of the complained of monies be returned.

CONCLUSION

For the reasons stated herein, the Defendant respectfully request that this Honorable Court Vacate the Sentence and Resentence based on the Factors determined by the Jury "Beyond A Reasonable Doubt" to a term of Imprisonment within the Guideline Range of 4-10 Months, with no supervised release imposed, for the Judgement in Default be Set Aside, and the Fines in the Amount of $75,000.00 and

*[last line illegible]*

-12-

the related cost of $7,500.00, totalling $82,500.00 be returned, and an ordered for his immediate release be rendered, and for any such relief that may be just and proper in this cause.

                                                Respectfully Submitted .

                                                Patrick A. Triumph
                                                Defendant, Pro-se

CERTIFICATION OF SERVICE

I, Patrick A. Triumph do depose that I have served the Person(s) below with true copies of the "Supplemental Memorandum to Aid Resentencing:

This 27th, Day of June, 2005

SERVICE MADE BY PERSONAL DELIVERY

> David A. Ring, Esq.
> Assistant United States Attorney
> United States Attorney's Office
> P.O. Box 1824
> New Haven, CT 06510

Respectfully

Patrick A. Triumph
Defendant, Pro-se
Reg. No 14622-014
Wyatt Detention Facility
950 High Street
Central Falls, RI 02863